# IN THE UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
# AT PEORIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 18-10023 |
| ) | |
| RICK A. HAMM, ) | |
| ) | |
| Defendant. ) | |

## GOVERNMENT'S RESPONSE TO
## DEFENDANT'S MOTION TO MODIFY PROBATION

NOW COMES the United States of America, by John C. Milhiser, United States Attorney for the Central District of Illinois, and Katherine G. Legge, Assistant United States Attorney, and responds to Defendant's motion for modification of his probation (R.111) hereby requesting the Court deny the motion as baseless and without factual foundation.

The COVID-19 pandemic is a danger to everyone everywhere in the world. It is not an *ipso facto* get-out-of-jail-free card.[1] Rather, it is a serious health issue

---

[1] For parallels in context of motions for compassionate release, *See, United States v. Eberhart*, No. 13-CR-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("a reduction of sentence due solely to concerns about the spread of COVID-19 is not consistent with the applicable policy statement of the Sentencing Commission as required by § 3582(c)(1)(A)."); and *United States v. Korn*, 2020 WL 1808213, at *6 (W.D.N.Y. Apr. 9, 2020) ("in this Court's view, the mere possibility of contracting a communicable disease such as COVID-19, without any showing that the Bureau

1

that calls for a rational, but measured response. The Defendant argues in his bare-bones motion he has health conditions that place him at higher risk, and therefore his five days jail time should be converted to home confinement. However, this Defendant has made it abundantly clear *outside of court* that he thinks the virus is a "hoax." Despite his transparent belief that the pandemic is fake and he "fear[s] getting hit by Lightning more than dying from the coronavirus," the Defendant attempts to weasel out from under the terms of his sentence because of it. See Exhibit 1. In reality, the Defendant's request is a thinly veiled attempt to unlawfully circumvent the jail time to which he agreed. Accordingly, his Motion should be denied, and the U.S. Probation Office be allowed to coordinate the timing and location of his jail time as they deem appropriate.

I.   **Procedural Background**

On January 9, 2020, this Court adopted the written plea agreement of the parties (R.87) and imposed a sentence of 24 months probation. R.100. In addition to standard terms, his probation includes a hunting and guiding ban, five[2] days imprisonment, $50,000 fine, $2,500 restitution. The five days imprisonment was

---

of Prisons will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason for a sentence reduction under the statutory scheme.").

[2] In his Motion, the Defendant alleges he was ordered to serve eight days of incarceration, wherein fact, he was only ordered to serve five days. The Government assumes this is a typo.

to be served between April 1 and May 1, 2020 in coordination of the U.S. Probation Office. R.100. At sentencing, the Court referenced the Defendant's lengthy history violating conservation law and the wisdom of not violating any terms of his probation.

At some point shortly after the pandemic's rise, the Defendant's attorney and the Government spoke and agreed to informally pause the timing requirement for Defendant's jail time until more was known and understood about the pandemic.

On Tuesday, August 11, 2020, the Defendant filed a Motion to Modify Probation, citing "the Defendant runs a higher rick [sic] than many were he to contact [sic] the COVID-19 virus." R.111. In support of his motion, he references his apparent medical issues of "recurrent pneumonia and tobacco use" as reasons he wants to convert his imprisonment to home confinement. Id. He does not allege having pneumonia currently or suffering from any illness presently.

For reasons explained below, the Government objects and requests the Court deny his motion.

## II.     Legal Framework

A sentence of probation constitutes a final judgment, notwithstanding a few exceptions. 18 U.S.C. § 3562.  Conditions of probation or supervised release

are part of a defendant's sentence, and the avenues available to alter a sentence are limited. 18 U.S.C. § 3562; United States v. Neal, 810 F.3d 512, 516 (7th Cir. 2016).   One such limited exception is that the Court, after considering factors set forth in § 3553, may modify, reduce, or enlarge the conditions of probation or supervised release pursuant to Fed. R. Crim. P. 32.1(c). To modify, Rule 32 requires the court hold a hearing wherein the defendant has a right to counsel, an opportunity to make a statement, and present any mitigating evidence.  18 U.S.C. § 3583(e)(2).

Because this Defendant claims his medical conditions warrant modification due to COVID-19, the Court's understanding of CDC risk factors and legal analysis of motions for compassionate release when "extraordinary and compelling reasons" exist are relevant.[3]  As the Court is very familiar with these motions, suffice the Government to say that Courts look to CDC risk factors and oftentimes hundreds of pages of medical records when deciding whether early

---

[3] See 18 U.S.C. § 3582(c)(1)(A); If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of "extraordinary and compelling reasons."  Under these circumstances, a chronic condition (*i.e.*, one "from which [the defendant] is not expected to recover") reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. USSG § 1B1.13, cmt. n.1(A)(ii)(I).

release is warranted for defendants with medical condition(s). Here, the Defendant has none.

### III.  County Jail Precautions

Since the start of the pandemic, the United States Attorney's Office has communicated with jail superintendents at each county who houses federal inmates in the Central District of Illinois. In response to the spread of COVID-19 in the community, each jail took the following aggressive mitigation measures, at a minimum:

1. Social visits and volunteer activities have been fully suspended to limit the possibility of the disease entering the jail;
2. Jail records and reception areas have been closed;
3. Body temperature is measured for any new inmate prior to their entering the jail;
4. Attorneys are requested to use non-contact visits with clients;
5. If attorneys elect to use contact visit areas, jail personnel disinfect the visit room after each use;
6. If attorneys elect to use contact visit areas, jail personnel issue the attorney disinfectant for their use during the visit;
7. Housing unit surfaces are cleaned daily;

8. Inmates are moved from their living quarters only for purposes of medical treatment and court appearances;

9. Restraints are regularly disinfected; and

10. Signage is posted throughout the facility with basic hygiene reminders for COVID-19.

Finally, if a case of COVID-19 were to be confirmed at a one of these jails, many of them have the capacity to place that person in isolation to stop the spread of the disease until that individual could be relocated to a medical facility. Any new arrestees are detained for a period of 14 days before they can enter the general population. Further, inmates are checked regularly for symptoms such as fever, and if they present any symptoms they are quarantined immediately. All county jails have medical staff available, including some such as Peoria County, whose medical staff are on staff 24 hours a day, 7 days a week.

As originally contemplated by the parties, the Defendant was considered to serve his five days jail time in Tazewell County Jail. The undersigned confirmed with Tazewell County Jail Superintendent Kempf that the Tazewell County Jail has zero cases of COVID-19.

IV. **Defendant's Public Posts**

In order for the Court to properly assess the credibility of the Defendant's motion, it is appropriate to evaluate the Defendant's relevant actions and attitudes in relation to the COVID-19 pandemic. Available publicly and captured by law enforcement are several of the Defendant's social media posts, attached hereto in Exhibit 1.

On March 31, 2020, the Defendant stated, "I fear getting hit by Lightning more than dying from the coronavirus". Ex. 1, p.2.

On May 21, 2020, the Defendant shared a post about COVID-19 and captioned it as a "deep state hoax!" Id. at 10. On May 26, he posts, "So I hear none stop how great the doctors and nurse are til I could puke!..." Id. at 11 (errors in original). He then comments on his own post, "I see we are having fun now all day long every 3 to 5 minutes it's on the radio. There is [sic] a lot of important people out there. COVID-19 this doctors that nurses that COVID-19 that all day long the whole goddamn thing is a hoax." Id. His May 31, 2020, post includes, "I'm sorry to tell you this but the pandemic is a complete hoax!..." Id. at 14.

On June 5, 2020, the Defendant takes a photo of a checkout line with three women, all wearing masks. Id. at 16. He appears to mock the women by

7

captioning, "What this country has come to! No and I'm not about to wear one! I ask at check out and she says no you don't have to wear one! The place was full of real intelligent people lol." Id.

On June 10, 2020, the Defendant posts, "Companies still advertising on the radio! Face mask, hand sanitizers! Really people! Get out of the basement away from the mold and get a job! What an American snow flake job! YOUR stupid! Dumb Asses!!!!" Id. at 18 (errors in original).  The Defendant posts again on June 10, stating, "And further more if I see you wearing a mask and you are not painting something here's what I'm thinking! I no longer want any one to even no that I no some body so damn stupid! That's just the politically correct version of what I'm really thinking!" Id. at 19 (errors in original). He goes on to say, "In due time most people will except [sic] that fact there never was a virus!" on July 2, 2020.  Id. at 21.

Beyond his social media posts, the Defendant attended the "White Trash Bash" on August 1, 2020, on the Illinois River, as verified by his own social media post on August 4 and confirmed by officers of the Illinois Department of Natural Resources. Id. at 22.  IDNR estimated over 500 people attended and reported that this Defendant has been a primary organizer for several years past.  In addressing the event, wherein few attendees wore masks, Illinois Department of

Public Health Director Dr. Ezike criticized the event and called for more personal and community responsibility. See "*State public health director condemns White Trash Bash in East Peoria*," Peoria Journal Star, Aug. 5, 2020 (available at https://www.pjstar.com/news/20200805/state-public-health-director-condemns-white-trash-bash-in-east-peoria).  The Defendant also touted his refusal to wear a mask while dining at Jonah's, in East Peoria, Illinois on August 19, 2020.  Id. at 24.

V.    **Argument**

Here, the Defendant's request to modify probation is disingenuous, at best, and the § 3553 factors all point to denial.  Be it clear that the Government has no concern over the personal opinions or daily practices of anyone (that is, beyond compliance with probation).  However, in arguing personal fright in the face of the COVID-19 virus, those attitudes and actions become relevant.

Typically, there are some merits to concerns about contracting COVID-19 while within a correctional institution, especially by those who have demonstrated risk factors identified by the CDC; the numerous motions for compassionate release by Bureau of Prisons inmates are proof.  However, in this case, it is a baseless concern. Neither of the conditions he complains of are CDC risk factors known to create an increased risk should he contract COVID-19. And,

though the defendant faces some risk of COVID-19 infection no matter where he spends his days, he faces a higher risk by remaining in society and failing to abide by CDC and IDPH recommendations than if incarcerated for five days at a COVID-19-free jail, such as Tazewell County.

The Defendant's history of noncompliance with the law spans back to the 1970s when he began receiving the first of dozens conservation violations. This offense is his second Lacey Act offense in federal court. Prior sentences failed to deter him from continued criminality for commercial gain as evidence by this case. Courts must promote respect for the law and provide just punishment for the offense; in this case, the defendant himself agreed this was just punishment for the offense. He is otherwise precluded from disturbing the judgment except for constitutional bases, of which this is not. Furthermore, to modify his jail time to home confinement would diminish his conduct as leader and organizer in relation to his less-culpable codefendants, each who are serving their respective probation periods currently.

Again, beyond compliance with the terms of his probation, the Defendant's personal choices are of no import to the Government—but misrepresentations to the Court certainly are. The Defendant cannot have it both ways: he cannot mock the pandemic and those who take it seriously, and then attempt to hide behind its

10

apron strings when he's court ordered to go to jail. He cannot call it a "hoax" while simultaneously using it to excuse his jail time. He cannot credibly argue his risk of infection is higher in a jail with zero cases as compared to being in society while taking no precautions.

There is nowhere in the world where the Defendant is safe from COVID -19, and there is nothing about his pending five days of incarceration that increases that risk. When all the § 3553(a) factors discussed above are also considered, the totality of the circumstances weighs even stronger against the defendant's motion.

As it relates to the timing, the Government suggests the timing of his jail time ordered be completed by November 1, 2020, or otherwise adjusted to be at a time and place coordinated under direction of the U.S. Probation Office.

## **CONCLUSION**

WHEREFORE, the United States respectfully requests that this Court deny the Defendant's Motion to Modify Probation for the above-stated reasons.

Respectfully submitted,

JOHN C. MILHISER
UNITED STATES ATTORNEY


By:   */s/Katherine G. Legge*
      Katherine G. Legge
      Assistant United States Attorney
      Office of the United States Attorney
      211 Fulton Street, Suite 400
      Peoria, Illinois 61602
      Tel: 309-671-7050
      Fax: 309-671-7259

**CERTIFICATE OF SERVICE**

I hereby certify that on August 31, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

*/s/ Katherine Legge*
Katherine Legge
